IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 17, 2013

## OMAR THERON DAVIS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 40500164     John H. Gasaway, Judge**

**No. M2012-01061-CCA-R3-PC - Filed May 22, 2013**

The petitioner, Omar Theron Davis, appeals the denial of his petition for post-conviction relief from his 2006 Montgomery County Circuit Court convictions of aggravated rape, aggravated burglary, aggravated robbery, especially aggravated kidnapping, and theft of property valued over $500, claiming that he was denied the effective assistance of counsel at trial. Discerning no error, we affirm the order of the Circuit Court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

B. Nathan Hunt, Clarksville, Tennessee, for the appellant, Omar Theron Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Arthur F. Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Montgomery County Circuit Court jury convicted the petitioner of three counts of aggravated rape, one count each of especially aggravated kidnapping, aggravated robbery, aggravated burglary, and theft of property valued over $500 but less than $1000. The trial court imposed an effective sentence of 60 years' incarceration. This court affirmed the judgments on direct appeal. *See State v. Omar Theron Davis*, No. M2007-02206-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Nashville, Dec. 16, 2008), *perm. app. denied* (Tenn. June 1, 2009).

In *Omar Theron Davis*, this court summarized the facts of the case as follows:

The [petitioner] was originally charged as a juvenile but was transferred to circuit court to be tried as an adult. At trial, [the victim] testified that she was home alone at approximately 7:00 a.m. on November 8, 2004, when her doorbell rang. When she opened the door, a man wearing a ski mask, a dark jacket with a hood, and black gloves barged into the house. He was carrying a handgun. She tried to leave, but the man slammed her into a wall, knocking her down. He then tied her hands behind her back. She said that she cried and pleaded with him to stop and that he held the gun to her head and told her to shut up. He removed her pants, pantyhose, and underpants and grabbed her arms, forcing her to the bedroom with the gun against her back. Once in the bedroom, he tied a sweater around her head so that she could not see anything. She said that she heard him getting undressed and that he raped her vaginally in several different positions. Afterward, he forced her into the kitchen where he used one of her kitchen knives to cut off her blouse and bra. He then took her into the bathroom where he fondled her and replaced the sweater that was covering her face with a bandana and something else over her eyes.

[The victim] testified that the [petitioner] forced her into the shower with him and washed her. She said that he dried her off and forced her back into the bedroom where he lifted her onto the bed and performed cunnilingus. He then held the gun to her head and forced her to perform fellatio. He raped her again vaginally. During the attack, he mentioned [the victim's] daughter and told [the victim] that she "had better cooperate." [The victim] said that the bandana loosened so that she was able to see the [petitioner's] face clearly. The attack ended when [the victim] told the [petitioner] that she could not keep up anymore and pretended to pass out.

[The victim] said that she heard the [petitioner] ransacking her bedroom after the attack and that the [petitioner] found a loaded gun that she kept in the drawer of her night stand. She said the [petitioner] put the gun to her head and asked if she had any more guns in the house. She told him about a broken rifle that was in the closet. He then asked her whether she had more

-2-

bullets. She denied having more bullets, although there were some in one of her drawers. The [petitioner] continued to rifle through the house until he found her purse. He lifted the bandana from her eyes to ask her about her two credit cards and her car key. She gave him the "PIN number" for one of the credit cards and confirmed that the key he found belonged to her car. He placed the bandana back over her eyes, and she heard the sound of zippers as though he were placing items in a backpack. Before the [petitioner] left the house, he forced the victim onto her stomach and tied her wrists and ankles together behind her.

[The victim] freed herself and called 9-1-1 a little after 8:00 a.m. When police arrived, she told them what had happened and that her car was missing. She was afraid that her daughter was in danger and insisted that the police send someone to Kenwood High School to get her daughter. Later that day, police showed [the victim] a Kenwood High School yearbook, and she identified the [petitioner] as her attacker.

The parties stipulated that the [petitioner] arrived at Kenwood High School at 8:47 a.m. on November 8, 2004. Hal Bedell, the school principal, testified that the [petitioner] signed in late that day. Based on a telephone call he received from the Clarksville Police Department that morning, Bedell instructed the school security officer to search the school parking lot for the victim's car. The car was discovered in the student parking lot. At approximately 9:00 a.m., Bedell advised Detective Parrish of the Clarksville Police Department that the car had been found.

Detective Ronald T. Parrish testified that he went to the [petitioner's] home around 6:00 p.m. on November 8, 2004, and searched the [petitioner's] bedroom. He found a wet bandana and a backpack underneath the [petitioner's] bed. Inside the backpack, he found items the victim had reported missing, including the gun from her night stand, one of her credit cards, her bra, her cellular telephone, two microcassette recorders, photographs, pens, and pencils. Detective Parrish also testified that the [petitioner] was excluded as a contributor of DNA that was obtained from the victim's rape kit. The victim testified

-3-

that she had intercourse with her fiancé during the weekend preceding the attack.

*State v. Omar Theron Davis*, slip op. at 2-3.

On May 11, 2010, the petitioner filed a timely petition for post-conviction relief, alleging multiple instances of ineffective assistance of counsel. Following the appointment of counsel and the amendment of the petition, the post-conviction court held an evidentiary hearing.

The petitioner testified that trial counsel failed to properly emphasize to the jury the fact that the deoxyribonucleic acid ("DNA") evidence recovered from the victim excluded him as a contributor. The petitioner believed that trial counsel should have hired an expert to determine the true identity of the DNA contributor and that if counsel had done so, the petitioner "wouldn't have got convicted of the charges [he] did." The petitioner alleged that trial counsel only met with him on one or two occasions prior to trial and that during one of those meetings, counsel told the petitioner that he was not prepared and that he did not have any defense for him. The petitioner also complained that trial counsel should have requested that the trial court merge his charges because they were all part of a continuing crime.

The petitioner claimed that trial counsel should have moved for a change of venue on the basis that, in the weeks leading up to his trial, publicity about the crime "was all in the newspaper, on the news, . . . it was everywhere. . . . I was lost from the beginning because it was no way nobody from Clarksville didn't know about my case and I believe it was too . . . hot at that time." He asserted that if trial counsel had moved for a change of venue, he would "have had a better chance." In his petition for post-conviction relief, the petitioner also alleged that, during voir dire, trial counsel failed to adequately question potential jurors about their knowledge of the case.

With respect to sentencing, the petitioner testified that he believed his sentence to be excessive. In his first amended petition for post-conviction relief, the petitioner argued that trial counsel failed to advise the petitioner of his right to be sentenced under the 2005 revised Sentencing Act. At his hearing, the petitioner further claimed that trial counsel failed to properly inform him regarding his right to testify. The petitioner conceded that the trial court informed him of this right and that he was 17 years old at the time of trial. He contended, however, that, when he informed counsel that he wished to testify, counsel responded that "the Judge was mad and that it would further make him mad if [the petitioner] was to get up on the stand and testify," and on that basis, the petitioner made the decision not to testify, which he believed impacted the verdict to his detriment.

Trial counsel testified that he had been employed by the Public Defender's office for nearly 20 years. He stated that he spoke with the petitioner "several times" prior to trial and that he underwent his typical trial preparation in the petitioner's case. He could not recall specifically how many times he met with the petitioner, but he testified that he was "confident" that he spoke with him on more than one or two occasions. When asked if anything unusual occurred in preparing for the petitioner's trial, trial counsel responded that he had the most difficulty with the following:

> [W]ithin an hour to two hours of this event occurring and the police being called, items that came from the victim's home were found in the home of the [petitioner], under his bed, . . . and it was one of those things where I am not quite sure what I could have done or who I could have called to explain how they managed to make their way from the victim's house to his house[.]

Trial counsel denied telling the petitioner that he was not ready for trial.

Regarding the DNA evidence, trial counsel explained that the DNA evidence from the victim's rape kit was not that of the petitioner and that there "was no physical evidence found in the house, either fingerprints or DNA . . . nothing that was found in the house connect[ing the petitioner] to this event." Trial counsel testified that he emphasized this point during cross-examination. When asked if he thought it important to determine who the DNA belonged to, he responded that he did not because the victim's car was located in the high school parking lot following the crime and her belongings were found in the petitioner's room mere hours after the crime occurred. Because of the overwhelming evidence against the petitioner, trial counsel expressed his concerns about the petitioner's testifying on his own behalf, but he did discuss with the petitioner his option to testify. Trial counsel recalled that the trial court conducted a relatively lengthy *Momon* hearing, explaining at length the petitioner's right to testify. *See Momon v. State*, 18 S.W.3d 152, 161-62 (Tenn. 1999).

When asked about his decision not to request a change of venue, trial counsel explained that the petitioner's case "did not rise to [the] level" of necessitating a venue change. Counsel did not recall much pretrial publicity on the case, particularly on the television or on the radio. He stated that the trial court generally questioned potential jurors about their independent knowledge of the case. Trial counsel testified that he did not believe that the failure to obtain a change of venue had any detrimental impact on the outcome of the trial. Trial counsel also stated that he did not believe any of the petitioner's charges warranted a motion to merge the convictions.

With this evidence, the post-conviction court denied relief. The court specifically found "that the petitioner has failed to establish that he received ineffective representation at trial."

On appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that trial counsel failed to properly address the DNA evidence; failed to adequately investigate and prepare for trial; failed to challenge the multiplicity of the rape, burglary, robbery, and theft counts; failed to move for a change of venue and failed to properly voir dire jurors about their knowledge of the case; failed to advise the petitioner regarding sentencing; and failed to advise the petitioner of his right to testify.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to relief via a claim of ineffective assistance of counsel, the defendant must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the defendant fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goud v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the defendant the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).

Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the trial court's factual findings, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record supports the post-conviction court's denial of relief. With respect to the DNA evidence, the court, in a very thorough and well-reasoned opinion, pointed out that the DNA results were "perhaps the strongest evidence in this case favoring the petitioner." If, as advanced in the original petition, counsel had moved to exclude the DNA evidence on the basis that the testifying detective was not an expert in the field of DNA testing, the jury would have never heard this potentially exonerating evidence. The post-conviction court found no deficiency in trial counsel's failure to identify the actual DNA contributor, noting that the petitioner had not provided the court with any authority in support of his argument that such a failure constituted ineffective assistance. Morever, the court pointed out the victim had testified that she had engaged in sexual intercourse with her fiancé two days prior to the rape and that evidence "conclusively identifying the actual source of the DNA (be it the fiancé or some other man)" would have contributed "little (if anything)" to the petitioner's defense. Furthermore, the court found that trial counsel, in both cross-examining Detective Parrish and in delivering his closing argument, sufficiently addressed the DNA evidence, emphasizing that no DNA evidence "whatsoever" connected the petitioner to the crime.

The post-conviction court accredited trial counsel's testimony that he met with the petitioner "several times" before trial and determined that the petitioner's statements to the contrary "lack[ed] credibility." The court specifically found that trial counsel's "pretrial preparation, investigation, and client interaction . . . did not constitute deficient performance." Regarding the petitioner's claim of multiplicity, the post-conviction court found, first, that evidence adduced at trial established three distinct forms of penetration: vaginal rape, forced cunnilingus, and forced fellatio. Citing *State v. Phillips*, the court pointed out that rape involving separate acts of penetration can lead to multiple convictions, even when the separate acts occur during one continuing episode. *See State v. Phillips*, 924 S.W.2d 662, 665 (Tenn. 1996) (citing *State v. Burgin*, 668 S.W.2d 668, 670 (Tenn. Crim. App. 1984). Second, the court held that the burglary, robbery, and theft convictions were not multiplicitous because each emanated from different facts. The aggravated burglary charge

alleged an intent to commit rape when the petitioner entered the victim's home. The charge of aggravated robbery alleged use of a deadly weapon to take items from the victim's home, and the theft charge related to the petitioner's theft of the victim's car. Because these crimes comprised separate factual elements, the trial court concluded that no basis existed for trial counsel to raise an issue of multiplicity.

With respect to the petitioner's argument regarding change of venue, the post-conviction court noted that the petitioner failed to present any evidence in support of his claim of excessive publicity. In the absence of such evidence, the court accredited trial counsel's testimony that pre-trial publicity was minimal. Regarding the petitioner's claim that trial counsel failed to properly voir dire potential jurors, the court again pointed out that the petitioner failed to provide a transcript of the voir dire proceedings in support of his assertion and held that the petitioner "has not established this factual allegation by clear and convincing evidence."

The post-conviction court was not persuaded by the petitioner's argument that trial counsel failed to advise him of his right to be sentenced under the 2005 revised Sentencing Act and that counsel's alleged failure resulted in an excessive sentence. Because the crimes at issue were committed on November 8, 2004, the court agreed that the petitioner could have elected to be sentenced under the revised Act, but the court found the petitioner was not prejudiced by being sentenced under the pre-2005 Sentencing Act. Although the petitioner believed he would have received a sentence of less than 20 years on each of the aggravated rape convictions under the revised Act, the trial court correctly held this belief to be erroneous. Under the revised Act, the petitioner could have potentially received a sentence of greater than 20 years for each count of aggravated rape, given the increased amount of discretion afforded to trial courts when making sentencing determinations.

Finally, the post-conviction court found no merit to the petitioner's claim that trial counsel failed to advise him of his right to testify or that the petitioner's failure to testify resulted in any prejudice.

We find no error in the findings of the trial court, and we hold the petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE